McCunn, J.
(dissenting.) I cannot agree in this case in opinion with the majority of the court.
There were but two questions in this case ; first, is a verbal agreement, to insure for one year, valid' in law ? and, secondly, does the charter of the defendants forbid such verbal contracts of insurance?
The action is brought to recover $2500, on a parol agreement to insure the property of a Mr. Tyler. The facts are as follows : A Mr. Davis, an insurance broker, and agent for Mr. Tyler, called at the office of the defendants, and saw the president- of the company. He stated to the president that he wanted a policy on the Franklin mills. The president looked at the property, and said, in the absence of the secretary, he would make the risk binding until the secretary’s return; and he slipped a memorandum to that effect in the secretary’s desk. In a few days Mr. Davis called again; saw the secretary and president, and, after some conversation, the risk was accepted *158 at two per cent. Mr. Davis handed a policy to the secretary, asking that a, like one be given. It gave a description of the property, showing that other companies had risks on the property, and Mr. Davis called their attention to the fact that the company had this same risk the year previous. A day or two after the premises were destroyed by fire Davis called and tendered the premium, $50, to the company. The secretary refused to receive the same.
The above facts were testified to by Mr. Davis, and corroborated, in a measure, by the president of the company. The secretary of the company, (Dusenbury,) denied the statement of Davis, and testified that he did not accept the risk. The learned justice, who tried the case, left the question to the jury as to whether there was a verbal contract of insurance, such as was testified to by Davis. If so, then, and in that case, the plaintiff was entitled to recover. Under this charge, the jury rendered a verdict for the full amount. I hold that such charge was quite correct in law, and the verdict rendered by the jury, accordingly, was a just and correct verdict.
It is now settled, beyond a doubt, that a verbal agreement for insurance is valid and obligatory on both the parties to the contract. In support of this proposition, cases in nearly all the states, and in England, are to be found. (2 Pars, on Cont. 5th ed. p. 350, and eases cited in the notes a, 5, c and d.)
A few prominent authorities only have to be examined, in order to convince us of this doctrine. Take, for instance, the latest case, The Baptist Church v. The Brooklyn Pire Insurance Company, (28 N. Y. Rep. 153.) That eminent jurist, Mr. Justice Denio, thus holds: That to constitute a valid contract of insurance, the minds of the parties should meet as to the premises insured, the risk, the amount insured, the time the risk should continue, and the amount of the premium, and that the contract might be verbal. Now, in this case, Davis testifies that the risk was shown the president and the secretary; the amount of insurance asked and agreed upon was $2500 ; the rate of premium fixed at two per cent; and *159 a policy handed to the secretary, he agreeing to that form of policy. Moreover, the officers knew that this company had taken a risk, for one year, on the same premises and property, the year previous. Surely, under such circumstances, the minds of the parties must have met and agreed upon all these points. If they did, then I have no hesitation in saying that the contract was complete. If any thing more was required to constitute a valid verbal agreement of insurance, I am at a loss to conceive what it could be.
But, to make the case more clear, it is conceded by all, by the counsel on both sides, and by the witnesses, and even the court is unanimous on the point, that the agreement made by Davis with the president, to the effect that he, the president, would make the risk binding until the secretary should return, was a good and valid agreement to insure. The terms of that contract were not, it is true, by any means as clear and definite as the one made by the secretary a few days after. The president testifies that he told Davis the books were locked up, and he could not take the risk that day. Davis then showed him a respectable list of other companies he had with him, which companies covered the property with insurance, and he, the president, said, when he saw the list of risks, he would, and he did, make it binding until the secretary's return. ■ Compare this testimony on the first agreement with the testimony on the second, and it will be seen, at once, that the latter is much the stronger. Therefore the second agreement was, at least, as binding as the first. Moreover, it is a well established custom with insurance companies, that, if other respectable companies have insured the risk, a second company, insuring the same property, never look at the risk. All they ask, or seek, is the amount of their premium, and then they consult the other companies.
But, as I have stated, this company had this risk before, and knew well all about it.
The Supreme Court of the United States held, unanimously, in the case of The Mutual Marine Insurance Co. v. The Union Mutual Insurance Co. (19 How. 318,) “ that a parol *160 agreement, to make and deliver a policy of insurance, need not be in writing,” and I do not hesitate to adopt that conclusion. The same clear rule was laid down by Mr. Justice Comstock, of the Court of Appeals, in the case of The Brooklyn Fire Insurance Company v. The First Baptist Church in Brooklyn, (19 N. T. Rep. 308.)
We have no law in this state requiring the contract of insurance to be in writing. .The agreement of insurance had its origin in mercantile law and usage, and has become so thoroughly incorporated with our municipal system, that a construction which denies the power and capacity of entering into such agreements in the nature of insurance, except in writing, rests upon no foundation.
The common law concedes to every person the general capacity of entering into contracts ; and this capacity relates alike to all subjects concerning which contracts may be made. It exists under no restraints in the mode of contracting, except those imposed by legislative authority. There is nothing in the nature of insurance which requires written evidence of the contract. I have merely commented on a few of the leading cases, and am unable to find any case holding a contrary doctrine. Indeed, these verbal agreements to insure, or to renew insurances, which is the same thing, are made, to a very great extent, every day, in this commercial community, and to hold them invalid would completely upset our present system of insurance, and would place at hazard an immense amount of property.
The remaining question to be disposed of is, whether the charter of this company forbids such verbal agreements.
As I read the charter of the defendants, it clearly does not forbid verbal contracts to insure. The second article declares, “ That the business of the company shall be to make insurance on dwelling houses, stores, and all kinds of buildings, * * * * and other property against loss or damage by fire, and the risk of inland navigation and - transportation.” How, this is the only section or article contained in their charter touching this question, and certainly there is nothing in that article *161 precluding the company from entering into such parol agreements for insurance. The 14th article says : “ That all policies of insurance shall he subscribed by the president, or, in case of his absence or inability, by such of the board of directors, &c.” But this section does not say there shall be no verbal agreements for insurance. It only declares that policies made out under these verbal contracts shall be signed by the president, &c. How, we all know the agreement to insure is made days, and sometimes weeks, before the policy is made out.
This was held to be the rule in the case in 19 N. Y. Rep. cited above. .In that'case, the policy sued on contained two articles precisely similar to the ones cited as contained in the policies issued by the defendants ; and Mr. Justice Comstock puts the question entirely at rest. To the able and learned opinion in that case, I most respectfully defer.
The judgment below should be affirmed, with costs.
Judgment reversed.